IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AVALONBAY COMMUNITIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:07cv998 |
| ) | |
| JAMES R. WILLDEN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Before the Court is Plaintiff AvalonBay Communities, Inc.'s ("AvalonBay") Motion for Partial Summary Judgment (Dkt. no. 29). James R. Willden ("Defendant") does not oppose or contest the Motion for Partial Summary Judgment, and he filed a notice consistent therewith (Dkt. no. 39). The Court finds that there are no material facts in dispute and that Counts I through IV of the Complaint can be resolved on the summary judgment motion. For the reasons set forth herein, the Court finds that AvalonBay is entitled to summary judgment on Counts I through IV.[1]

### I. Factual Background

AvalonBay has a corporate headquarters in Alexandria, Virginia, and is a national real estate investment trust engaged in the development, acquisition, renovation, and management of apartment communities in numerous markets throughout the United States. AvalonBay employed Defendant until November 30, 2006. During Defendant's employ, he was responsible

---

[1] Upon the representations of counsel for AvalonBay that it considers the remedy of treble damages pursuant to 18 U.S.C. § 1962(c) to be punitive damages, Plaintiff declines to pursue the punitive damages claim in Count V of the Complaint.

for managing all aspects of the engineering department, including supervising preventative maintenance, remedial repairs, and routine capital improvements at communities owned and managed by AvalonBay.

Tetra Tech, Inc. ("Tetra Tech") is a company that provides consulting, engineering, and technical services with an expertise in environmental matters. Tetra Tech employs roughly 8,500 people with 275 offices worldwide. Among Tetra Tech's employees was Art Willden, Defendant's brother, who was a supervisor with accounts payable authority, and he worked in the Fort Collins, Colorado office. Another company, the San Jose Water Conservation Corporation ("San Jose"), operates a plumbing business that specializes in low-flow toilets, and is located in Temecula, California. Michael Schroll ("Schroll") is the owner and President of San Jose. San Jose employed less than 10 employees.[2]

During Defendant's employ at AvalonBay, Defendant recommended to AvalonBay that it retain Tetra Tech as a national vendor to provide environmental consulting and environmental remediation services, primarily mold related, at AvalonBay communities throughout the country. Defendant failed to disclose to AvalonBay that his own brother, Art Willden held a supervisory position at Tetra Tech. After AvalonBay so retained Tetra Tech, Defendant and his brother, Art

---

[2] Judge Lee granted summary judgment in AvalonBay's favor against San Jose and Schroll on April 2, 2008. Judge Lee also entered a judgment in AvalonBay's favor in the amount of $9,135,196.00 on the same date.

Willden prepared a number of no-bid contracts[3] under which San Jose agreed to provide subcontract services.

San Jose submitted the invoices to Art Willden at Tetra Tech who approved them for payment. Art Willden then submitted the Tetra Tech invoices to Defendant who approved them for payment by AvalonBay. Over one hundred invoices changed hands during this scheme totaling payment from AvalonBay to Tetra Tech in the amount of $6,477,082.58. (Hutchins Aff. ¶ 20). These payments were made through numerous checks sent through regular mail and Federal Express from AvalonBay's Alexandria, Virginia office to Tetra Tech's Fort Collins, Colorado office. Tetra Tech, with the requisite approval from Art Willden, paid San Jose a total of $2,483,634.00 for work that San Jose never performed. (Hutchins Aff. ¶ 21). San Jose and Schroll then took that money and made kickback payments to Defendant.

Defendant's scheme didn't stop there. In the second phase, between September 2005 and September 2006, Defendant, San Jose, and Schroll caused AvalonBay to enter into direct contracts with San Jose for allegedly providing supplies and construction related services to AvalonBay communities. During that time, Defendant prepared, and Defendant directed other AvalonBay employees to prepare 74 construction contracts for work to be performed by San Jose. The purported work included mold cleaning, mold verification and sampling, roof repairs, exterior door painting, roof sheet replacement, supplying lumber, supplying windows, landing repairs, landing post replacement, asphalt repairs, concrete repairs, cooling tower replacement,

---

[3]AvalonBay's routine procedure for work contracts involves sending out each contract for competitive bidding. The final contract pricing is then negotiated by the regional engineering managers at the particular AvalonBay community where the work was to be performed. The no-bid contracts at issue in this case were undertaken without the knowledge or consent of the regional or local engineering managers.

fire alarm system upgrade, hallway renovation, excavation work, structural repairs, dry rot repairs, carpet supply, and carpet installation at AvalonBay communities throughout the country.

Despite the fact that San Jose never performed any of the aforementioned work, Schroll and San Jose sent 137 invoices to Defendant at AvalonBay totaling $3,045.332.00. (Hutchins Aff. ¶ 28). Along with the invoices, Schroll also sent an executed release and lien waver form, required by AvalonBay, which purported to certify that work was completed on 113 different occasions. Despite Defendant's knowledge that no work had been performed, Defendant approved the invoices for payment by AvalonBay, and Defendant sent 27 checks from AvalonBay in Virginia to San Jose in California totaling $3,045,332.00. (Hutchins Aff. ¶ 32). San Jose and Schroll then paid over much of the stolen money to Defendant through checks and cashier's checks totaling more than $3.1 million.

Defendant abruptly resigned from AvalonBay on November 30, 2006, after he was advised that he would be expected to speak to an independent accountant and auditor retained by AvalonBay the next day. Defendant thereafter refused to speak to the outside investigator. Pursuant to a civil forfeiture proceeding, the FBI seized $16,834.27 in funds from Defendant's bank account and remitted said funds to AvalonBay. (Hutchins Aff. ¶ 45).

## II. Jurisdiction and Venue

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Count III of the Complaint states a cause of action arising under the laws of the United States and the remaining counts are part of the same case and controversy. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

4

### III. Standard of Review

Summary judgment is appropriate when it is apparent from the entire record, viewed in the light most favorable to the non-moving party, that there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court may properly deny summary judgment when there is sufficient evidence favoring the non-moving party that would allow a reasonable jury to return a verdict for that party. *See Anderson v. Liberty Libby, Inc.*, 477 U.S. 242, 255 (1986). However, entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The Court must further grant summary judgment where the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### IV. Discussion

#### A. Count I - Fraud

To establish a fraud claim under Virginia law, there must be: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with the intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (citing *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)).

The undisputed evidence of record establishes that Defendant mislead AvalonBay by hiding his relationship with Tetra Tech, specifically his brother, Art Willden's role at Tetra Tech,

when Defendant recommended that AvalonBay make Tetra Tech a national vendor for services. Defendant also falsely represented to AvalonBay that Tetra Tech completed all of the work under the AvalonBay and Tetra Tech contracts and that San Jose completed the work required under the Tetra Tech and San Jose contracts. Defendant made these false representations when he approved for payment the invoices submitted by Tetra Tech and San Jose, signaling that payment had been earned and completion of the work had been verified. Defendant further failed to disclose that he received kickback payments that resulted in his own personal financial gain, in exchange for providing large quantities of no-bid contract work for Tetra Tech.

The aforementioned misrepresentations and omissions were material because AvalonBay would not have retained Tetra Tech as a national vendor had it known that Defendant was conspiring with his brother to receive kickbacks in return for providing the lucrative contracts to Tetra Tech and San Jose. *See Packard Norfolk, Inc. v. Miller*, 95 S.E.2d 207, 211-12 (Va. 1956) (holding that "a fact is material when it influences a person to enter into a contract, when it deceives him and induces him to act, or when without it the transaction would not have occurred"). Further, AvalonBay would have declined to pay the Tetra Tech and San Jose invoices had AvalonBay known that work had not actually been performed. *See id.*

Defendant intentionally and knowingly made the misrepresentations and omissions to AvalonBay in his efforts to further his fraudulent scheme to receive kickback payments. Defendant also made the misrepresentation and omissions to AvalonBay with the intent to mislead AvalonBay so that AvalonBay wouldn't learn of his fraudulent scheme. AvalonBay, in the dark as to Defendant's scheme, reasonably relied on their long term employee's representations that Tetra Tech would be a good national vendor for AvalonBay. AvalonBay

also reasonably relied on the veracity of the Tetra Tech and San Jose invoices bearing Defendant's initials on each, purportedly signifying that the work had been performed. Based on Defendant's approval of Tetra Tech Invoices, AvalonBay paid Tetra Tech $6,477,082.58, of which $2,483,634.00 went to San Jose for work never performed. Based upon Defendant's approval of the San Jose invoices, AvalonBay paid San Jose $3,045,332.00 in return for absolutely nothing from San Jose. Plaintiff has established, through the undisputed evidence in the record, that Defendant is liable for fraud. Therefore, AvalonBay is entitled to summary judgment on the fraud claim.

### B. Count II - Business Conspiracy

The Virginia Code has a statutorily created civil cause of action for a business conspiracy. Specifically, "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (I) willfully and maliciously injuring another in his reputation, trade, business or profession by any means . . . [shall be liable to the injured for] three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel, and without limiting the generality of the term, "damages" shall include lost profits." Va. Code Ann. §§ 18.2-499-500 (1994).

Defendant worked in concert with Tetra Tech, Art Willden, and San Jose to steal millions of dollars from AvalonBay. Defendant approved for payment over one hundred invoices submitted by Tetra Tech to AvalonBay totaling $6,477,082.58. Tetra Tech then paid San Jose a total of $2,483,634.00 comprised of 27 separate payments for work never performed, that became kickback payments to Defendant. Defendant also facilitated payment by AvalonBay to San Jose for 137 invoices for work that was never performed. San Jose then made more

kickback payments to Defendant. As a result of Defendant's conduct, AvalonBay suffered an injury and pursuant to the statute, is entitled to three times that loss. Va. Code Ann. § 18.2-500 (1994). Accordingly, AvalonBay is entitled to summary judgment on the business conspiracy claim.

### C. Count III - Racketeer Influenced and Corrupt Organization Act ("RICO")

Title 18 of the United States Code states that:

"[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

To establish a civil RICO claim for a violation of section 1962(c) therefore, Plaintiff must establish the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Racketeering activity refers to a number of crimes, one of which is federal mail fraud. *See* 18 U.S.C.A. § 1961(1). "The elements of mail fraud are (1) a scheme disclosing an intent to defraud, and (2) the use of the mails in furtherance of the scheme." *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 336 (citing *Pereira v. United States*, 347 U.S. 1 (1954)).

Additionally, Plaintiff can only recover if "he has been injured in his business or property by the conduct constituting the violation." *Sedima*, 473 U.S. at 496. Having so established an injury to "his business or property by reason of a violation of section 1962 . . . [Plaintiff] shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . ." 18 U.S.C. § 1964(c).

8

The association of AvalonBay, Tetra Tech, and San Jose as client, vendor, and subcontractor, and AvalonBay and San Jose as client and vendor constitutes an enterprise that was conducted and controlled by Defendant on AvalonBay's part, Art Willden on Tetra Tech's part, and Schroll on San Jose's part. *See United States v. Turkette*, 452 U.S. 576, 583 (1981) (holding that an enterprise can be both legitimate and illegitimate business). Defendant, Art Willden, and Schroll perpetrated their fraudulent scheme by transferring copies of contracts, invoices, releases, and payments through the United States Postal Service mail and through Federal Express, a private interstate mail carrier. *See* 18 U.S.C.A. § 1341. More specifically, a Federal Express tracking number is recorded on each copy of the San Jose checks. These transfers constitute a use of the mail in furtherance of their fraudulent scheme. *See Chisolm*, 95 F.3d at 336.

A "pattern of racketeering activity," requires "at least two acts of racketeering activity ... within ten years" of each other. 18 U.S.C. § 1961(5). RICO targets "the threat of continuing activity," not "sporadic activity." *Sedima*, 473 U.S. at 497 n.14. "[T]o prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (quoting *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989)). "Predicate acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* (internal citations omitted).

Defendant's conduct unquestionably constitutes a pattern of racketeering activity. Over the course of many months between 2003 and 2007, Defendant, Tetra Tech, Art Willden,

San Jose, and Schroll prepared no-bid contracts, under which San Jose was to provide subcontract services for mold testing and mold remediation services. San Jose submitted invoices for work that was never performed to Art Willden at Tetra Tech who approved them for payment. Art Willden then submitted the invoices to Defendant who approved them for payment by AvalonBay. Defendant approved over one hundred invoices for payment from AvalonBay to Tetra Tech totaling $6,477,082.58. Tetra Tech then made 27 separate payments to San Jose totaling $2,483,634.00, part of which became kickback payments to Defendant. All of these exchanges were made through the United States mail and Federal Express.

During the second part of Defendant's fraudulent scheme, San Jose, Schroll, and Defendant prepared 74 contracts for work that was never performed. From those sham contracts, San Jose prepared 137 invoices for work never performed and submitted them to AvalonBay for payment using the United States mail and Federal Express. Defendant effectuated payment from AvalonBay to San Jose with 27 checks on the phony invoices, which Schroll received through the United States mail and Federal Express and endorsed. San Jose then paid much of the stolen money to Defendant through checks and cashier's checks totaling more than $3.1 million, also through the use of the mail.

Defendant's scheme, effectuated through the use of the United States mail and Federal Express cost AvalonBay $5,512,329.73. Having so established an injury to their business as a result of Defendant's racketeering activity, AvalonBay is entitled to treble damages pursuant to

18 U.S.C. § 1964(c). Accordingly, AvalonBay is entitled to summary judgment on the RICO count in the amount $16,536,989.19.[4]

### D. Count IV - Breach of Fiduciary Duty of Loyalty

An "employee's fiduciary duty to his employer prohibits the employee from acting in a manner adverse to his employer's interest." *Hilb, Rogal and Hamilton Co. of Richmond v. DePew*, 440 S.E.2d 918, 921 (Va. 1994). Defendant breached the fiduciary duty of loyalty owed to AvalonBay when Defendant failed to disclose the true nature of Art Willden's employment status at Tetra Tech. Defendant further breached his fiduciary duty of loyalty to AvalonBay when he acted for personal monetary gain at the expense of AvalonBay when he executed contacts and caused invoices to be paid by AvalonBay to San Jose and to San Jose through Tetra Tech for services that were never provided. AvalonBay sustained damages as a direct result of Defendant's breach of his fiduciary duty of loyalty to AvalonBay. For these reasons, AvalonBay is entitled to summary judgment for Defendant's breach of his fiduciary duty of loyalty owed to AvalonBay.

---

[4] AvalonBay's Memorandum of Law in Support of the Motion for Partial Summary Judgment has inconsistent damages calculations and the Court is unable to discern where the discrepancies arise. Accordingly, the Court will award Plaintiff the lesser of the Plaintiff's varying damages calculations. This amount, however, constitutes the maximum allowable statutory recovery by Plaintiff, as the Court awards treble damages.

## V.  Conclusion

For the reasons stated above, summary judgment in favor of the AvalonBay is hereby GRANTED on Counts I through IV of AvalonBay's Complaint.

Entered this \_\_\_ day of July, 2008.

Alexandria, Virginia

/s/ _____
**Liam O'Grady**
**United States District Judge**